1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9

10  Supplier's City SA de CV,              )
                                           )
11              Plaintiff,                 )   No. CV-06-2503-PHX-PGR
                                           )
12      vs.                                )
                                           )         ORDER
13  EFTEC North America, LLC, et al.,      )
                                           )
14              Defendants.                )
    _____    )

15

16      Pending before the Court is Defendant's Motion to Dismiss or,

17  Alternatively, to Transfer Venue (doc. #7).  Having considered the parties'

18  memoranda and the oral argument of counsel, the Court finds that it lacks

19  personal jurisdiction over defendant EFTEC North America, LLC and that this

20  action should be transferred to the United States District Court for the Eastern

21  District of Michigan pursuant to 28 U.S.C. § 1631.

22  Background

23      Plaintiff Supplier's City SA de CV ("Supplier's City") commenced this action

24  in the Maricopa County Superior Court on July 20, 2006, and it was removed by

25  defendant EFTEC North America, LLC ("EFTEC") on the basis of diversity of

26                              - 1 -

citizenship jurisdiction on October 19, 2006.  The complaint, which alleges claims for breach of contract and for services rendered, arises out of an oral agreement the parties entered into in early 2005.  EFTEC, a  company headquartered in Troy, Michigan with plants in Taylor, Michigan and Dayton, Ohio, had a contract with Ford Motor Company to supply Ford's automobile plant in Hermosillo, Sonora with sealants used in Ford's manufacturing process; that contract obligated EFTEC to facilitate the transportation of its products to Hermosillo. EFTEC  contracted with Supplier's City, a Mexican company headquartered in Hermosillo, to handle the importation and warehousing of EFTEC's products. Pursuant to the parties' agreement, EFTEC would deliver the barrels of sealants to a custom broker hired by Supplier's City at the Nogales, Az. port of entry (which EFTEC did using a third-party transportation company, ChemLogix) where Supplier's City would take possession of them and ship them to Hermosillo and store them there until needed by Ford; Supplier's City would subsequently ship the empty, reusable barrels back to EFTEC's manufacturing facilities via Nogales. The underlying dispute between the parties arose in late 2005 - Supplier's City states that under the terms of the agreement EFTEC was responsible for payment of all costs associated with the importation of its products, including any value added taxes, duties, custom brokerage fees, and warehousing costs, and that EFTEC owes it some $368,000 for those costs.[1]

---

[1]

     The complaint alleges in part: "Pursuant to the terms of the Agreement, Defendant was responsible for all costs associated with the importing and transportation of the goods, including, but not limited to, the taxes, duties, custom brokerage fees, and warehousing costs. Despite its obligations, Defendant has refused to pay [the plaintiff's] invoices for these costs."

1    <u>Discussion</u>

2         EFTEC argues in part that this action should be dismissed pursuant to

3    Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[2]  When a defendant has

4    moved to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears

5    the burden of demonstrating that personal jurisdiction exists. <u>Schwarzenegger v.</u>

6    <u>Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).   Where, as here, the

7    motion is based on written materials rather than on an evidentiary hearing, the

8    plaintiff need only make a prima facie showing of jurisdictional facts, and the

9    Court must accept as true the plaintiff's version of the facts and must resolve any

10   factual conflicts in the affidavits in the plaintiff's favor. *Id.*

11        In order to establish personal jurisdiction, the plaintiff must show both that

12   the forum state's long-arm statute confers personal jurisdiction over the non-

13   resident defendant, and that the exercise of jurisdiction does not violate federal

14   constitutional principles of due process. <u>Gray & Co. v. Firstenberg Machinery Co.</u>,

15   913 F.2d 758, 760 (9th Cir. 1990).  Since Arizona's long-arm statute permits the

16   exercise of personal jurisdiction to the extent allowed by the federal due process

17   clause, <u>CE Distribution, LLC v. New Sensor Corp.</u>, 380 F.3d 1107, 1110 (9th Cir.

18   2004), the jurisdictional inquiries under state and federal law merge into one

19   analysis governed by federal law, *i.e.* whether the defendant has sufficient

20   ────────────────────

      [2]
21        EFTEC also argues that this action should be dismissed pursuant to
22   Fed.R.Civ.P. 12(b)(3) because venue is not proper here under the general venue
     statute, 28 U.S.C. § 1391(b).  The Court concludes that venue is proper here as a
23   matter of law pursuant to 28 U.S.C. § 1441(a), which governs venue in removed
     actions.  <u>Polizzi v. Cowles Magazines, Inc.</u>, 345 U.S. 663, 665-66, 73 S.Ct. 900, 902
24   (1953); *accord*, <u>Hollis v. Florida State University</u>, 259 F.3d 1295, 1299 (11th Cir. 2001)
     ("[O]nce a case is properly removed to federal court, a defendant cannot move to
25   dismiss on § 1391 venue grounds.")

26                                        - 3 -

minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

Supplier's City contends that the Court has specific personal jurisdiction over EFTEC.  The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a defendant comports with due process: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable. CE Distribution, LLC v. New Sensor Corp., 380 F.3d at 1111; Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

(1) Purposeful Availment

EFTEC argues that the purposeful availment test is not met here.  In cases arising out of contractual relationships, the Ninth Circuit applies a purposeful availment test that requires that the defendant engage in some sort of affirmative conduct allowing or promoting the transaction of business in the forum state, such as deliberately engaging in significant activities within the state or creating continuing obligations between itself and residents of the forum.  Gray & Co. v. Firstenberg Machinery Co., 913 F.2d at 760 (citing to Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 2183-84 (1985)).  This focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as the resort of random, fortuitous, or attenuated contacts, or by the unilateral activity of another party or third party.  Burger King, 471 U.S. at

- 4 -

1   475, 105 S.Ct. at 2183.

2        Given that EFTEC has not entered into any contract with a resident of

3   Arizona, the issue here is whether EFTEC's activities create a substantial

4   connection with Arizona.  EFTEC, supported by the affidavits of its sales

5   manager, James Huyck, argues that it does not have the required minimum

6   contacts with Arizona because its manufacturing facilities are in Michigan and

7   Ohio, it is not licensed or authorized to do business in Arizona and has no agent

8   for service of process here, it does not own or use any real or personal property

9   here, it has no offices, employees, agents, telephone listings, mailing addresses,

10  or bank accounts here, it does not advertise or solicit customers here, it has sold

11  its products to only one Arizona customer since 1999, none of the negotiations

12  surrounding its oral agreement with Supplier's City occurred in Arizona or

13  involved the use of communications into or out of Arizona, and it sent all

14  payments to Supplier's City in Hermosillo.[3]  The gist of EFTEC's argument is that

15  the mere fact that its products traveled through Arizona on a third-party's trucks is

16  insufficient as a matter of law to establish specific personal jurisdiction over it

17  here.  It also argues that the only reason Arizona has any connection with this

18  action is that Supplier's City insisted that the Nogales port of entry be used for the

19  importation of the products into Mexico, which was a location that EFTEC states it

20  had no preference about since to it the border-crossing location was immaterial.

21        Supplier's City argues that EFTEC's activities meet the purposeful

22

23        [3]

24        Huyck states in his second affidavit that although it sent customs invoices to the
    custom broker in Nogales at Supplier's City's request, the invoices only stated the value of the
25  products being shipped across the border and were not created or sent to the broker for billing
    purposes.

26                                    - 5 -

availment test because EFTEC knowingly obligated itself to conduct business in

Arizona inasmuch as the contract required EFTEC to deliver its products to

Supplier's City's customs broker in Nogales and EFTEC did so for some ten

months in 2005 before the parties' dispute arose.

Based on the current limited record before it, the Court concludes that the

purposeful availment test has not been met because EFTEC's contacts with

Arizona directly related to Supplier's City's claims are relatively insignificant for

jurisdictional purposes.[4]   The nature of those activities is important to the

resolution of the purposeful availment issue.  *See* Thomas P. Gonzalez Corp. v.

Consejo Nacional de Produccion de Costa Rico, 614 F.2d 1247, 1252 (9th Cir.

1980) ("[I]t is not the quantity, but rather the 'nature and quality' of the defendant's

activities which determine whether extension of jurisdiction offends due

process.")  The purpose of the parties' contract was not to promote the

transaction of business in Arizona per se, but rather to facilitate the transportation

of EFTEC's products from Michigan and Ohio to Hermosillo; the products were

not shipped to Arizona to be used or consumed by Arizona residents, and EFTEC

---

[4]
        Huyck further states in his second affidavit:

        6.  In paragraph 9 of the Mazon Declaration, Plaintiff claims that EFTEC is
        responsible for charges allegedly incurred relating to value added taxes, duties,
        custom brokerage fees and transportation costs.  While EFTEC disputes that it is
        responsible for any of the charges sought by Plaintiff, all charges relate to
        activities in Mexico.  None of the charges relate to any activities in Arizona.  My
        understanding is that value added taxes are owed to the Mexican government
        with respect to the importation of EFTEC's products into Mexico if Ford sells in
        Mexico a certain number of automobiles in which EFTEC's products are used.
        Charges relating to duties and customs brokerage fees are incurred as a result of
        Plaintiff brokering of EFTEC's products across the United States-Mexico border.
        Warehousing charges are the result of Plaintiff's agreement to warehouse
        EFTEC's products in its warehouse in Hermosillo, Mexico until they were needed
        by Ford.

had no continuing contractual obligations with any Arizona resident.

(2) Relationship of Claim to Forum Activities

EFTEC also argues that Supplier's City has not established that its claims arise out of EFTEC's Arizona-related activities.  The Ninth Circuit has adopted the "but for" test for determining whether a plaintiff's claims arise out of or relate to the defendant's forum-related activities.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  Under this test, a claim arises out of the forum-related activities if it would not have happened but for the defendant's forum-related activities. *Id.*; Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 271 (9th Cir. 1995).

Supplier's City argues that the "but for" test is met in four ways: (a) but for EFTEC's agreement to conduct business in Arizona, including the delivery and importation of its products, the contract between the parties would not have been formed; (b) but for EFTEC's delivery of the products to Nogales, the custody of the goods would not have been transferred and there would be no dispute between the parties; (c) but for EFTEC's agreement that Supplier's City  would import EFTEC's products into Mexico at the Nogales port of entry and EFTEC's consent to use an Arizona customs broker, the VAT taxes, customs brokerage fees, warehousing charges, and transportation costs for services provided in Arizona would not have been incurred; and (d) but for EFTEC's agreement that Supplier's City would transport its empty drums back to EFTEC  via the Nogales border crossing, no dispute over Supplier's City's performance of this obligation would exist.

EFTEC, supported by Huyck's second affidavit, argues that its forum-related activities cannot satisfy the "but for" test because the various VAT taxes, duties, customs brokerage fees, and warehousing costs underlying Supplier's

- 7 -

City's claims were incurred because its products crossed into Mexico, not because Supplier's City imported its goods specifically at the Nogales port of entry.

While this is a close issue given the limited record, the Court concludes that the "but for" test has not been met.  It appears that whatever charges were incurred as a result of the importation of EFTEC's products into Mexico, and the warehousing of those products in Mexico, would have been incurred regardless of the location of the border crossing point.[5]  *See* Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d at 272 (Court noted that the "but for" test is not met if the plaintiff would have suffered the same injury even if none of the defendant's contacts with the forum had taken place.)

(3) Reasonableness

EFTEC further argues that the exercise of personal jurisdiction over it in Arizona would be unreasonable.  The Ninth Circuit considers seven factors in making this determination: (a) the extent of the defendant's purposeful injection into the forum state's affairs; (b) the burden on the defendant of defending in the forum; (c) the extent of the conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (g) the existence of an

---

[5]
Notwithstanding the written and oral arguments of Supplier's City's counsel, the affidavit of Enrique Mazon, Supplier's City's director, does not specifically establish that there never would have been a contract between the parties if a border crossing point other than Nogales was used.  In any case, however, a conclusion that the "but for" test has been met here would not change the Court's ultimate conclusion that it lacks personal jurisdiction over EFTEC.

- 8 -

alternative forum. *Id.* The seven factors must be balanced since none of them are dispositive. Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998); Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991). The Court concludes that the majority of these factors favor EFTEC.

(a) Purposeful injection - This factor favors EFTEC to some extent given that its contacts with Arizona are so attentuated. The Ninth Circuit has recognized that "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

(b) Burden on defendant - This factor favors EFTEC, which Supplier's City concedes. Supplier's City is correct, however, that EFTEC's burden of litigating in Arizona has not been shown to be so great that the burden by itself makes the exercise of jurisdiction unreasonable. *See* Ballard v. Savage, 65 F.3d 1495,1501 (9th Cir. 1995) (Court stated that unless the inconvenience to a non-resident defendant in litigating in the forum is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of personal jurisdiction.)

(c) Extent of conflict with sovereignty of defendant's state - This factor favors Supplier's City given that nothing in the record indicates that litigation of this matter in Arizona would create a conflict with Michigan's sovereignty. *See* Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986) (Court noted that sovereignty interests may carry significant weight only when a defendant is from a foreign country.)

(d) Arizona's interest in adjudicating dispute - This factor strongly favors EFTEC in that Arizona has little, if any, interest in a private lawsuit between two

non-residents that does not allege any injury to an Arizona resident. *See* <u>Pacific Atlantic Trading Co. v. M/V Main Express</u>, 758 F.2d 1325, 1330 (9th Cir. 1985) (Court noted that the forum's interest in adjudicating the breach of a contract executed outside of the forum by non-forum parties is "relatively weak.")  While Supplier's City, noting that Arizona formed the Arizona-Mexico Commission to promote a strong, cooperative relationship with Mexico and that Nogales is Arizona's gateway to Mexico, argues that Arizona has a substantial interest in seeing that disputes which effect its business relationships with Sonora are promptly and effectively resolved, this lawsuit does not implicate Arizona's interest in maintaining a relationship with Mexico.  *See* <u>Amoco Egypt Oil Co. v. Leonis Navigation Co.</u>, 1 F.3d 848, 852 (9th Cir. 1993) ("The absence of a forum state interest weighs heavily against the reasonableness of [the forum's] assertion of jurisdiction.")

(e) Most efficient forum - This factor favors EFTEC in that Arizona is not the most efficient forum for the resolution of this dispute given that the Ninth Circuit has noted that ordinarily the most efficient forum will be the district where the injury occurred and where the evidence and witnesses are located.  <u>Core-Vent Corp.</u>, 11 F.3d at 1489; <u>Decker Coal Co.</u>, 805 F.2d at 841.  The place of injury to Supplier's City is presumably its headquarters in Hermosillo given that its claims are based on EFTEC's non-payment of its invoices.   According to the parties' affidavits, the only possible witness noted to live in Arizona is the customs broker in Nogales; all of the knowledgeable employees of the two parties live in Sonora, Michigan, Tennessee and Texas, and all of the relevant business records are in Sonora and Michigan.  Furthermore, no party contends that Arizona law is the substantive law that governs this matter.

1    (h) Importance of forum to plaintiff - This factor favors Supplier's City in that

2  it has established by affidavit that this Court is the most convenient to its

3  operations in Hermosillo, that the only office in this country to which it has access

4  is in Phoenix, that its counsel are located in Phoenix, and that the burdensome

5  logistics of having to litigate in Michigan would potentially interfere with its ability

6  to seek a remedy against EFTEC.  The Ninth Circuit, however, has noted that the

7  plaintiff's convenience is "not of paramount importance" in resolving the

8  reasonableness element of specific jurisdiction.  Dole, 303 F.3d at 1116; accord,

9  Core-Vent Corp., 11 F.3d at 1490 (Court noted that neither it nor the Supreme

10  Court has given much weight to the inconvenience to the plaintiff in balancing the

11  reasonableness factors).

12    (i) Alternative forum - This factor favors EFTEC.  Supplier's City has the

13  burden of proving the unavailability of an alternative forum, Core-Vent Corp., 11

14  F.3d at 1490; Amoco, 1 F.3d at 853, and it cannot do so here since the Eastern

15  District of Michigan is an effective alternative forum notwithstanding that it may be

16  more costly and inconvenient to Supplier's City.  Panavision International, L.P. v.

17  Toeppen, 141 F.3d at 1324; Core-Vent Corp., 11 F.3d at 1490.

18    Having concluded that it lacks specific personal jurisdiction over EFTEC,

19  the Court further concludes that it would be in the interests of justice to transfer

20  this action pursuant to 28 U.S.C. § 1631 to the Eastern District of Michigan, which

21  is a court where this action could have been brought at the time it was filed.[6] See

22  Cruz-Aguilera v. Immigration and Naturalization Service, 245 F.3d 1070, 1074 (9th

23

---

[6]

24    Since the Court concludes that a § 1631 transfer is appropriate, it does not
reach the issue of whether a transfer would also be appropriate pursuant to 28 U.S.C.
25  § 1404(a).

26                                              - 11 -

1  Cir. 2001).   Therefore,

2       IT IS ORDERED that Defendant's City Motion to Dismiss (doc. #7-1) is

3  denied.

4       IT IS FURTHER ORDERED that Defendant's [Alternative Motion] to

5  Transfer Venue (doc. #7-2) is granted to the extent that this action is transferred

6  to the United States District Court for the Eastern District of Michigan pursuant to

7  28 U.S.C. § 1631 for want of personal jurisdiction.

8       DATED this 6th day of June, 2007.

9

10

11

12                          Paul G. Rosenblatt
                            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26                              - 12 -